NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S.,**
*Plaintiff-Appellant*

v.

**UNITED STATES, UNITED STATES STEEL CORPORATION,**
*Defendants- Appellees*

---

2014-1744

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00001-JMB, Senior Judge Judith M. Barzilay.

---

Decided: June 24, 2015

---

JULIE MENDOZA, DONALD CAMERON, JR. Morris, Manning & Martin, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by R. WILL PLANERT, BRADY MILLS, MARY HODGINS, SARAH SUZANNE SPRINKLE.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United

States. Also represented by JOYCE R. BRANDA, JEANNE E. DAVIDSON, FRANKLIN E. WHITE, JR; WHITNEY MARIE ROLIG, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC.

JENNIFER HILLMAN, Cassidy Levy Kent (USA) LLP, Washington, DC, argued for defendant-appellee United States Steel Corporation. Also represented by JOHN D. GREENWALD, JONATHAN M. ZIELINSKI, THOMAS M. BELINE, JAMES R. CANNON, JR.

---

Before NEWMAN, LOURIE, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Borusan Mannesmann Boru Sanayi ve Ticaret A.Ş. ("Borusan") appeals the decision of the Court of International Trade sustaining the Department of Commerce's ("Commerce") determination that Borusan engaged in targeted dumping.[1] *Borusan Mannesmann Boru Sanayi ve Ticaret A.Ş.*, 990 F. Supp. 2d 1384 (Ct. Int'l Trade 2014); *see also Circular Welded Carbon Steel Pipes and Tubes from Turkey; Amended Final Results of Antidumping Duty Administrative Review; 2010 to 2011*, 78 Fed. Reg. 286 (Dep't of Commerce Jan. 3, 2013). The Court of International Trade found that Commerce was justified in using the average-to-transaction comparison methodology described in 19 U.S.C. § 1677f-1(d)(1)(B) (2012) to calculate the appropriate dumping margin to apply to Bo-

---

[1]    Targeted dumping occurs when "comparable merchandise 'differ[s] significantly among purchasers, regions, or periods of time.'" *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1359 (Fed. Cir. 2010) (quoting 19 U.S.C. § 1677f-1(d)(1)(B) (2012)).

rusan's circular welded carbon steel pipe and tube products. *Borusan*, 990 F. Supp. 2d at 1388–89. Borusan on appeal challenges Commerce's decision to use the average-to-transaction method of § 1677f-1(d)(1)(B) because, according to Borusan, Commerce failed to consider if the observed "pattern of export prices . . . that differ significantly among . . . periods of time," 19 U.S.C. § 1677f-1(d)(1)(B), in Borusan's products occurred due to increases in raw material costs, and not due to Borusan's pursuit of any intentional targeted dumping scheme. Borusan does not challenge Commerce's statistical analysis under § 1677f-1(d)(1)(B) as applied to Borusan's products, and only contests Commerce's decision to perform the average-to-transaction targeted dumping analysis without also considering Borusan's alternate explanation for the observed pricing pattern.

Our court recently addressed this issue in *JBF RAK LLC v. United States*, No. 14-1774, slip op. at 15–17 (Fed. Cir. June 24, 2015). The panel in *JBF RAK* concluded that § 1677f-1(d)(1)(B) does not require Commerce to consider alternate explanations for a "pattern of export prices . . . that differ significantly among . . . periods of time," and upheld Commerce's approach to analyzing targeted dumping. *Id.* at 16 ("Section 1677f-1(d)(1)(B) does not require Commerce to determine the reasons why there is a pattern of export prices for comparable merchandise that differs significantly among purchasers, regions, or time periods . . . ."). We agree with that holding. Section 1677f-1(d)(1)(B) is silent regarding Commerce's consideration of alternate explanations, beyond targeted dumping, for a pattern of export prices that differs significantly among purchasers, regions, or time periods. Under the two-part test of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), because Congress has not "directly spoken to the precise question at issue" here, we must determine if Commerce's interpretation of § 1677f-1(d)(1)(B) "is

based on a permissible construction of the statute." Nothing in the language of the statute requires Commerce to take the extra analytical step proposed by Borusan—consideration of Borusan's alternate explanations for the pricing patterns observed through use of the *Nails* test. *See also Borusan*, 990 F. Supp. 2d at 1389 ("The court cannot identify any language in the statute . . . that might require Commerce to investigate whether a given respondent has a legitimate commercial reason for such a pricing practice."). We thus agree with the *JBF RAK* panel that Commerce's interpretation of § 1677f-1(d)(1)(B) is reasonable.

In light of our decision in *JBF RAK*, and because Borusan has merely challenged Commerce's failure to consider Borusan's alternate explanation for the observed pricing patterns, we affirm the Court of International Trade's judgment sustaining Commerce's calculation of a 3.55% dumping margin using the average-to-transaction comparison methodology.

## AFFIRMED